Our final case on the call of the docket today is case number 111052, agenda number 11, Snyder v. Heidelberger. Counsel for the appellant. May it please the Court, Ms. O'Grady, Mr. Klein, I'm very privileged to be here this morning. I represent Elliot Heidelberger, who was the defendant attorney in the underlying legal malpractice case. Excuse me, I may have missed it, but did you state your name for the record? Patricia Argentati. Argentati. Yes. Thank you. Mr. Heidelberger was the attorney who was asked to draft a quick claim deed back in May and June 1997, purportedly transferring a piece of property, a residential piece of property, into joint tenancy between Wilbert and Judith Snyder. Mr. Snyder passed away in December of 07. And it was subsequently learned that, in fact, no interest had transferred to Judith back in 1997 because Wilbert did not have sole title or any interest in title. It was held in a land trust, of which he was the beneficiary and the successor beneficiary was his daughter, Stephen. I think the case comes down to what do you need for a legal malpractice case? And as this Court is well aware, we need the duty, we need the breach of the duty, and we need actual damages and injury. Not the last injury, not all of the injuries, but an injury. And it's our contention that that injury occurred, allegedly, to Judith at the time when she thought she was getting a one-half interest in joint tenancy with survivorship rights, so back in the May-June 1997 time period. Plaintiff has stated in argument and in the briefs, has acknowledged, there may well have been multiple injuries in this case, one of them being the failure to transfer any interest to Judith in 1997. Plaintiff has stated, and I paraphrase, Judith suffered an arguable economic loss at the time the quick claim deed was prepared. Going on, to be intellectually honest in this case, we must acknowledge that an injury occurred at the time of the drafting of the quick claim deed. And even in the briefs filed with this Court at page 4, plaintiff has stated Wilbert intended Judith to receive immediate title as a joint tenant with rights of survivorship in the May-June 1997 time period. So the legal malpractice in this case, if it occurred ---- Under your theory, aren't we putting a client, the deceased husband, in a position of having to pay a second lawyer to check upon advice given by the first lawyer? The problem there is with intent and what exactly was intended. And Wilbert's not here to talk about that. And that's another of our arguments, that intent is being conclusorily stated. It's simply stated Wilbert had an intent to transfer. And Judith had an intent to receive. Unfortunately, those are conclusions. There is no evidence to support those conclusory allegations. The evidence, according to Mr. Heidelberger, was he was requested to draft a quick claim deed to place the property in question into joint tenancy, and in fact, that's what he did. Isn't that the intent? Well, the request, the legal services requested were to draft a deed to place the property in question into joint tenancy. In fact, that was done, and that is the evidence of what was done. Whether there was an intent to go beyond that, whether there was an intent to check the title, whatever the intent was, in fact, I think Judge Polkjoy, in ruling on his motion, said ---- So the client must be aware of the ---- must know enough law to request his lawyer to be sure you check the title to see how it stands now before you draw this kind of deed. Or at least the attorney has the right to rely on a client who comes and says, I own this property and I want it placed into joint tenancy with my newly married spouse. And in fact, that's the only evidence we have, is that was requested and that was done. I think Judge Polkjoy, at the time he ruled in favor of our motion to dismiss, said we have no other evidence of what the intent was. It could well have been Wilbert said, listen, I just want to keep her quiet, draft the deed in joint tenancy and put her name on it. There's simply nothing other than the fact that the client requested a quick claim in joint tenancy and that's what was done. Ms. Argentani? Yes. We have a little bit of everything here from the appellate court, don't we? Oh, we do. Right. So we have, you know, Justice McLaren that would wait until after the death, right, basically? Well, he took two positions because at one point he said there could have been two and ultimately the majority opinion was at the time of death is when the injury occurred. And the dissent by Justice O'Malley would agree with your position, that fair statement? True. All right. So what my specific question is with respect to Justice Jorgensen and the special concurrence, you know, she might agree with you that the statute has run as to that first injury, right, that you have said. Correct. But with respect to the injury that occurs after Wilbert's death, she would say there would be a cause of action as to that, right? Right. So what is wrong with that analysis? Because, again, going with Justice O'Malley, the second part of that injury, if you will, stemmed out of or rose out of the first injury. The first and primary injury is Judith never received an interest in the property. That is the core out of which any subsequent injury or damage flowed. And the case law is not that the legal malpractice case does not begin to run until all the injuries have occurred, but only at such point as the client knows reasonably could have known or should have known or in the case of the statute of repose, six years from the date of the alleged negligence, which in this case, inarguably, is the drafting of the quick claim deed. And that was in 1997. What is your authority for your argument that the limitations period commences as soon as there are any damages? The case law that we cited, which indicates specifically just the incurrence of attorney's fees in order to remedy the alleged negligence, underlying negligence, that can start the running of the statute. No one argues, I don't even think Judith takes the position here, that she failed to suffer an injury at the time she thought she was getting a half interest in the property and, in fact, got nothing. Inarguably, that's the start. I think the question becomes, at what point, then, does the legal malpractice statute begin to run? And our position is the case law indicates that as soon as there is actual injury or damage, that's enough for the statute, in this case, the statute of repose, begin to run. Now, I know the Second District cited the Waco case. We believe that that is significantly different from the case here. That was a living trust. And the court focused, this court focused on the fact, well, the error could be corrected at any time, which, of course, in case of a living trust, it could. The error in this case was the drafting of a quick claim deed to hold that nothing starts to run until Wilbert's death would basically put into question a statute of limitations as to any real estate transaction. Because arguably, any time a grantor of real estate continues to live, the argument would be the legal malpractice case, if there was malpractice, does not begin to run because it could be corrected at any time. Whereas a living trust, certainly the person who retains the right to change the terms of the trust, that, in fact, can be changed at any point in time. That's the right of that individual. But when you transfer real estate or an interest in real estate, the grantor does not get to go back and automatically and on his own change that. If you truly have transferred a half interest in the property, that half interest would have then belonged to Judith. So it's different than saying it could have been corrected. The error could have been corrected at any time. Again, to hold otherwise would to state that a legal malpractice case is always premature in a real estate transaction as long as the person granting an interest continues to live. In that scenario, a grantee may never have the benefit of a legal malpractice case if they pre-decease the grantor. And I don't think that's what this Court or the law intends. Cases cited by the plaintiff, including, for example, the Peterson case, Peterson specifically and expressly stated that it was not addressing a situation where a real estate attorney negligently fails to place real property, in that case, into a tenancy in the entirety. So those cases are specifically excluding reference to the type of situation we're dealing with here. Justice Thomas referred to the dilemma that we've been placed in by the three opinions from the Second District. We don't have clear guidance of exactly when does the statute begin to run. The majority opinion, which I disagree and agree with Justice O'Malley, that probably isn't the majority opinion, is that everything waits until Wilbert's death, and that's the position Justice McLaren took, versus Justice O'Malley, who, yes, I do agree with, and he said it starts to run at the time of the injury, at the time of the drafting of the deed, and that the injuries that flowed from that do not change the statute. And then, of course, Justice Jorgensen, who took kind of a middle-of-the-road approach. But still, it doesn't give us much guidance as far as when you have a real estate transaction, when does that statute begin to run, and the whole purpose of the statute of repose is to put some limit. And, yes, there are cases, and this may well be one of them, where Judith did not have notice, could not have had notice about the presence of a legal malpractice case. But, in fact, that's the purpose behind the statute of repose. And with all due respect, we'd ask that the trial court's dismissal of this case be reinstated and affirmed. Thank you. Thank you, Mr. Argenti. Mr. Kline, Counsel for the Appellee. Good morning, Your Honors. May it please the Court, my name is Timothy Kline. I have had the privilege of representing Judith Snyder from the date that she walked into my office in January of 2008, with notice that she was going to be evicted from the marital home that she had shared with her husband for approximately 10 years. Could you start with the record? Yes, of course. I'm happy to note that that case is a 7-0 opinion by this Court in 2008, which holds, I think, entirely consistently with Peterson v. Wallach, and recognizes the real basis for my client's relief here, which is the statute in question, which is paragraph D, is an otherwise exception to the statute of repose, and it talks about the injury being caused by the act or omission does not occur until the death of the person for whom professional services were rendered. In my brief, I give at least seven instances where the facts are similar to WACRO and to this case. Although my opponent would like to make a distinction on the basis that that was a trust case, and arguably there weren't things going to be happening unless and until somebody died, I actually believe that those similarities are exactly the same in a scenario where an attorney creates a joint tenancy with right of survivorship relationship, where the grantor husband conveys from himself to himself and his wife. So the question there is, well, what happens upon the first of them to die? There is actually a loss in this case on the first of the joint tenants to die. The real issue is, did Judith Snyder stand to receive anything from Wilbert, her husband, upon his death? And of course she did. And since she did not, that was the date of the injury which the plaintiffs contend are compensable. At the time the deed was drafted, had the title to the property been in the husband's name, Judith would have received an interest in the property at that time. Is that not true? She would have received an undivided one-half interest as a joint tenant between two persons back when the deed was prepared. Can she do anything with that one-half interest? Would she convey it, sell it? Well, it's an interesting question, and I think it's answered in part in the pleadings in this case where the two of them, his husband and wife, in 2006 went to Itasca Bank and actually got a mortgage under the assumption that they are both joint tenants with rights of survivorship. They both needed to sign off on that document. The bank did a title search, found that the last deed of record was a quit claim, and gave them the funds. So she did have rights, and she exercised them. Could she have conveyed that to a third party? Joint tenants can sever the joint tenancy. This Court has recognized that repeatedly. The rights of an undivided one-half interest can be mortgaged, they can be executed on. So had she gotten those rights, there wouldn't have been any problem. But she obviously lost something when the deed was created. We say, as counsel has quoted me to Judge Popejoy, Your Honor, to be intellectually honest, there was an injury when she got nothing from day one. If you compare the relationship of joint tenants to tenants in common, had Judith Snyder been given a tenancy in common, she would have received nothing in the event of her husband's death. We would have no case. It's too late. But because Elliot Heidelberger created this relationship, whether he was asked to or not, we don't know. Mike, Mr. Wilbert Snyder's deceased. We don't know what he said, what he did, what he thought. But had Mr. Heidelberger created a tenancy in common relationship, there would be no injury on the death of Mr. Snyder. So what we're relying on... Going back to what you just said. You said it didn't make any difference whether he knew or whether he didn't know. So this is premised on the fact that an attorney has a duty to check the title, check the chain of title, prior to executing any kind of a document like this? Well, I think not unlike the WACRO decision of this Court of a couple of years ago, where the land was actually in a land trust, and yet the attorney perhaps didn't check, went on the premise that it wasn't in that document, attempted to create a disposition here. I think this Court could find, and I'm an attorney that's going to be bound by whatever your decision is as well, that there is a duty to check if a client comes in, again, in this case, we don't know what was said, to determine, do you own title? Am I going to participate in a meaningful transaction with a client, or am I just going to rely on someone who comes in and says, can you do this and that for me? And the attorney sort of goes, well, sure, I can do anything. I'm just a scrivener here. I don't really have a duty to look beyond the transaction you're asking me to set up. Had Mr. Heidelberger said, sure, I'll do a title search. Oh, you don't have title as an individual, Mr. Snyder. You're a beneficial interest of a land trust owner. We've got to do this a little differently. We're going to amend the beneficial interest. I'm not going to do a quick claim. So an attorney can't or shouldn't take directions from his client that says, you know, I want a quick claim to put it in joint tenancy. I think there are duties that we need to impose upon ourselves as attorneys. And the duty of competency, I think, extends to the point of testing a client's intentions, stated discussions and goals, and then implementing them appropriately. And I don't believe Mr. Snyder came in and told this attorney the type of document to use or made a representation about what kind of title he held. We don't know. We'll never know that. All I know is Mr. Heidelberger prepared a quick claim deed from Mr. Snyder to himself and his wife in joint tenancy with rights of survivorship. Everybody knew from that day that when one of them died, the other would become... But you had, and I think you've said, that there was an injury that occurred at that time. Well, to the extent an injury is the loss of a right, or the loss of a right for which the law provides a remedy, arguably, and we're taught this, I think, from property law and law school, when someone doesn't receive a right that was intended, that's a moment of loss. Now, she lived there for ten years without anybody displacing her. So did she suffer economically? Maybe she didn't. In fact, she went and got a mortgage. She lived happily with her husband until the day of his death. But, counsel, she never did receive the right because she never received an interest. She was... That was the intent, it would occur to me, from the creation of that document. I know, but she had no right to incur a loss. I mean, she didn't have the right because she never received anything. But I think it comes in two parts with the nature of that conveyance. It's an immediate interest as well as, if you will, a future interest, although I don't think technically it is. What interest did she get immediately? I'm sorry? What was the interest she got immediately?  And then upon his death, the whole, or vice versa. If she pre-deceased her husband, he would then have effectively gotten back to where he once belonged as the sole owner. So there's really two components to a joint tenancy relationship with right of survivorship. I understand that, but she didn't actually get anything because there was no right under that conveyance for her. She didn't, but we contend that Section 214.3D provides that remedy. You may recall that that... And that's why before, I want to get into D. I asked Ms. Argentati the question relating to the special concurrence about a couple of injuries here. Yes. What's wrong with her response that the first injury, which you acknowledge, is really the predecessor to the second injury and therefore that would be the injury even under the provision you would have us look at, which is D. It says when the injury caused by the act or omission does not occur until the death of the person. She thinks we should stop really at subparagraph C. You point us to D on the death. Well, what injury are we talking about? Doesn't that injury that you talk about after the death really merge into the first injury? I think that's where Justice Berkman was just inquiring. I appreciate that distinction, and I really think that if we look at the fact, my contention is there are two injuries that could be created from the same operative facts of an attorney improperly creating a document, whether it's a trust, whether it's a deed, whether it's a joint tenancy relationship. In this case, D says when the injury, that would be the one I'm complaining of, caused by the act or omission does not occur. Well, the act or omission is the creation of the joint tenancy deed when that was the wrong document. There are two injuries, though. The immediate lack of receiving an undivided one-half interest, and the second on the death of the first joint tenant. That's because of the nature of joint tenancy property. So you're asking us to adopt a special concurrence, then? I don't have any problem with Justice Jorgensen's concurrence if that's the alternative that this court finds to be the most reasonable in the sense of certainly a half loaf is better than no loaf. I actually believe that although we haven't been through the trial court level to the extent that other cases have, we're out on a motion, I think that the court could hear testimony as to the value of the loss of an undivided one-half interest. I think that's ascertainable. So at a minimum, I think this court should affirm the two underlying Snyder opinions, one and two or A and B, however you like it, and certainly rely on this court's own findings and opinion in Wackrow v. Nemi and Peterson v. Wallach. I think the line of cases is consistent. Well, on the subject of intellectual honesty, which you talked about, do you find Justice McLaren's position based on the death to be somewhat problematic? Well, when I... We're giving you another opportunity to say something we can later use against you. Maybe I should sit down. If you look at the opinion of the court by Justice McLaren, it's virtually identical in the first opinion as well as the second. The only real switch to the second opinion is the concurrence and then, of course, the dissent. I'm not given any indication or insight as to why the concurrence and the dissent didn't appear in the first opinion. I was very, very happy when the August... I'm sorry, the October 2009 opinion came. Very slick, very clean. Wackrow v. Nemi, we're done. Opposing counsel asked for a rehearing. Although that was denied, they reissued the opinion, and that's where some of these wrinkles come in. But the bottom line still is Wackrow v. Nemi is 7-0. The first decision in Snyder is 3-0. The second decision is still 2-1. I don't... I would hope that the body of evidence, if you will, that's come out of the jurisprudence here is no matter how you count it, whether there's a concurrence or a dissent, the right side of this case is still in favor of Mrs. Snyder. Can you cite any case that... where there... on this two-injury aspect? Well, not under this statute. And I've tried to analogize that. I think counsel has done an admirable job, too, scouring the cases for other types of scenarios, whether it's tort or contract. And I have to keep coming back to actually, again, Wackrow v. Nemi, where we look at estate planning contexts more than anything. But that was a singular injury at the time of the death, right? The cases thus far, I believe, have been considered singular injury by the nature of the document. So if we would conclude that there is a singular injury at the time of the death, then we'd be adopting a special concurrence? Because you've already said there was some injury earlier. Well, I... I... Again, to be consistent, at least with myself, I think there were two events of injury, either of which could give rise to a cause of action. Unfortunately, the first one's too late. Right. But the second one is not. So you will be... That's a special concurrence. The special concurrence makes the suggestion that there are two injuries. And I think Justice Jorgensen says she doesn't have a problem with that. And, and I may be extending her logic a little bit, the entire loss could be pinned on either one. I don't... We haven't gotten any direction from anyone. And perhaps this panel will provide it. To the extent there is a ruling and it's in favor of Mrs. Snyder, perhaps we do need some direction in terms of either how to quantify that loss if it is the second of the two or if it is the second of the two and it is the entire loss. That we have no direction from. And I've looked at the legislative history. I've looked at trying to find cases from other jurisdictions. And this is, this is a new one. We've been focusing primarily on when the injury occurred. But let me back up a little bit and perhaps in line with Justice Varmus' question about the attorney's duty. Here, we don't know what transpired at the time that the deed was prepared. One of the questions I have with regard to the duty is there any significance in the fact that a quit claim deed was used as opposed to a warranty deed. Sometimes that's done when it's unclear as to what the title is and I'm going to convey whatever I have even if I don't have anything. So then is the duty, is the legal malpractice here the preparation of the deed that didn't convey what parties thought maybe was being conveyed or is the legal malpractice the failure to conduct a title search? If the client comes in and says here's the deed to myself and my former wife or just to myself, I want this deed now prepared to convey it to myself and my current wife, where's the legal malpractice? I understand that. I think if you look at the complaint, we've set forth sort of the syllogism of the duties that Mr. Heidelberger owed to his client and all of them are assumed in the duty. I think he could have done any or none of several in the job that was necessary to determine whether this client who presented himself with a problem to be solved, I don't think he did anything that was necessary to convince himself or give advice to his client to properly effectuate the goals of the client. Now whether that meant he should have ordered a title search, he should have ordered a plat of survey, he should have asked for a marriage license, I don't know those things but the title was not in the name of Mr. Snyder that could have been ascertained in several different ways, the most conclusive of which would have been an accurate title search. So I think again, in conclusion, I'm asking that Judith Snyder and her rights be recognized as they have been in the underlying two appellate court cases here and that you affirm the appellate court and remand this cause for further proceedings. Thank you. Thank you counsel. Very briefly, we have counsel's argument about what could or should have been done with regard to Mr. Heidelberger but we're relying and this court must rely simply on the allegations of the complaint and the allegations of the complaint conclusorily state that at all relevant times it was the intent of Wilbert and Judith to become co-owners as joint tenants with rights of survivorship. There is no evidence before this court other than speculation and argument as to what Mr. Heidelberger should have done, did do, should have done. It's simply not before this court at that time nor was it before Judge Popejoy nor was it before the appellate court. Thank you. Ms. Heidelberger. Yes. With respect to subparagraph D, when the injury caused, what about a statutory constructional analysis why the couldn't apply to either of the two injuries in this case? Well, I think the answer to that is the second injury if that's the way you want to look at it never comes about without the first one. It truly is an outgrowth of the first. If she, Judith, never received an interest in joint tenancy, there never was a right of survivorship. And by the plaintiff's own allegations, it was the intent she become a joint tenant with rights of survivorship. So it truly is not a second distinct, discrete injury. It's an outgrowth of the first one. And again, there is no case law cited that I'm aware of or cited by the plaintiff's attorney in this case which indicates that there can be multiple injuries and the statute does not begin to run whether it be limitations or repose until the last possible injury. Certainly, the statute doesn't say the last injury and the case law, again, indicates that a cause of action for legal malpractice accrues when each element of the claim is known or reasonably can be known or is available that would include duty, breach, and an injury damages which could be as minimal as attorney's fees without actually a remedy for the underlying negligence. In this case, no one argues the injury and, in fact, the primary injury occurred in 1997. So for all of those reasons, we'd ask that the trial court be Counsel, let me ask you this question in terms of the difference between the two injuries. Is it possible to draft a conveyance that would give a life estate interest only as a joint tenant without survivorship? I think that's possible. So if that is possible, then there is a way to distinguish between that life estate and the right to be conveyed intended to be conveyed as a survivorship right, sole exclusive. I certainly think that that's possible. There's no evidence that there was ever any intent or that that occurred here. The only evidence, again, and we're going on plaintiff's allegation and the evidence we do have is that it was always intended to be joint tenancy with rights of survivorship and with rights of survivorship that constitutes this injury which flows out of the first one and which would never have happened without the first one. Thank you. Case number 111052 Snyder v. Heidelberger Agenda number 11 is taken under advisement. Mr. Marshall, the Illinois Supreme Court stands in adjournment.